IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESSE WILLIAMS

                Plaintiff,                              CV. 04-1532-AS

     v.                                        OPINION AND ORDER

PORTLAND HABILITATION CENTER, INC., an
Oregon non-profit corporation,

                Defendant.

_____

ASHMANSKAS, Magistrate Judge:

      Plaintiff Williams alleges claims of wrongful discharge, sex discrimination under federal and

state law, disability discrimination under federal and state law, and retaliation for taking family

medical leave against his former employer, Portland Habilitation Center, Inc. ("PHC"). Currently

before the court is PHC's Motion for Summary Judgment. (Docket No. 21.) For the reasons that

follow, PHC's motion is GRANTED, and Williams's claims are DISMISSED.

## BACKGROUND

      On August 31, 2001, PHC hired Williams as a delivery driver. (Pl.'s Ex. 3.) Williams was

eligible for this Javits-Wagner-O'Day Act ("JWOD") position because of his diagnosed Attention Deficit Hyperactivity Disorder ("ADHD") and chronic anxiety. (Pl.'s Ex. 10.) During his interview, Williams informed PHC that he could not use maps because he is "geographically not sound in that area," and PHC agreed to accommodate Williams by providing him with written directions. (Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. ["Pl.'s Mem."] at 2.) PHC also allowed Williams to return to the PHC warehouse in between deliveries, rather than proceeding directly from delivery point A to delivery point B. (*Id.*)

In May 2003, Williams complained to Alana Scott, a PHC human resources official, about Monica Cunningham, his direct supervisor. (Pl.'s Mem. at 3-4.) Williams reported that Cunningham had told him to "just keep staying right there and just keep looking good," and later made a similar inappropriate comment. (*Id.*) He also complained that Cunningham had chased him around the warehouse and swatted him in the buttocks with her clipboard. (*Id.*) Finally, he complained about Cunningham's general treatment of him in the workplace, noting that she would often yell at him, and change the board identifying which delivery runs Williams needed to make, presumably to confuse him. (*Id.*) Williams also alleges that Cunningham would often untuck her shirt and then tuck it back into her tight jeans in front of him in a provocative way, although it is unclear whether this was brought to Scott's attention. (*Id.*)

On May 20, 2003, Williams met with Scott, Cunningham, and Donna Witkowski, a PHC general manager, to address his complaints. (*Id.* at 4.) PHC asserts and Williams believes that sexual harassment was not discussed at the meeting. (Concise Statement of Material Facts in Supp. of Def.'s Mot. for Summ. J. ["Def.'s Facts"] at 5; Pl.'s Concise Statements of Material Facts in Dispute ["Pl.'s Facts"] at 3.) Williams opines that the meeting went poorly and did not resolve his

complaints.  (Pl.'s Mem. at 4.)

On May 30, 2003, Williams received his performance review from Cunningham, who gave him both positive and negative comments.  (*Id.* at 5.)  Williams believes that the negative comments were made in retaliation for his complaints about Cunningham.  (*Id.*)

On June 11, 2003, Williams went on a 12-week family medical leave, which was tentatively approved by PHC in a June 13, 2003, letter, and formally approved in a July 15, 2003, letter.  (*Id.* at 5-6; Decl. of Allyson S. Krueger in Supp. of Def.'s Mot. for Summ. J. ["Krueger Decl."] Ex. A at 60-67.)  Williams received and reviewed both letters, and did not question PHC's family leave policies.  (Def.'s Facts at 3; Pl.'s Facts at 2.)  Williams also received a copy of PHC's Family Medical Leave Policy during his employment.  (*Id.*)  That policy explains that employees are eligible to apply for extended leave, and that whether an extension is granted is made on a case-by-case basis. (Krueger Decl. Ex. A at 46.)

On September 5, 2003, PHC informed Williams in writing that he had exhausted his leave, and that if he was interested in continuing his employment, he should make a request in writing within seven days.  (*Id.* at 68.)  Failure to make this request would result in PHC terminating Williams's employment.  (*Id.*)  In a letter dated September 11, 2003, Williams stated that, "I am still interested in being an employee of [PHC] . . . .  But unfortunately, . . . at this time[] I'm very unhealthy, and I'm sick.  But will you please still consider me when I'm filling [sic] better."  (Pl.'s Ex. 28.)  Williams did not otherwise contact PHC about returning to work.  (Def.'s Facts at 4; Pl.'s Facts at 2.)

On October 2, 2003, PHC administratively discharged Williams, stating that the reasons for termination were "voluntary, medical," and indicated that Williams was eligible for rehire.  (Pl.'s Ex.

29.) Williams did not make a request to return to work. (Def.'s Facts at 4; Pl.'s Facts at 2.) Williams has no knowledge about the decision to terminate his employment, and does not know who participated in the decision. (Def.'s Facts at 5; Pl.'s Facts at 3.) Williams is unaware of any facts to support his claim that his discharge was in retaliation for him complaining about Cunningham. (*Id.*) Williams is also unaware of any accommodation that PHC could make to allow him to return to work. (*Id.*) PHC completed a performance review of Williams in 2004 for JWOD compliance purposes. (Pl.'s Ex. 30-32.) The review noted that Williams had trouble with multitasking, and required another person to lay out work plans for him. (*Id.*)

On May 13, 2004, Williams filed an administrative charge with the Oregon Bureau of Labor and Industries ("BOLI"). (Pl.'s Ex. 16.) The charge notes sex discrimination and retaliation, and the parties disagree as to whether the charge also includes disability discrimination. (*Id.*) On July 28, 2004, BOLI dismissed the charge. (Krueger Decl. Ex. F.)

On September 9, 2004, Williams filed his complaint in state court, alleging six claims: (1) wrongful discharge "for complaining about unwelcome conduct of a sexual nature, and/or taking Oregon family medical leave;" (2) sex discrimination and retaliation pursuant to Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.*; (3) sex discrimination pursuant to O.R.S. Chapter 659A; (4) disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; (5) disability discrimination under O.R.S. Chapter 659A; and (6) termination for taking family medical leave. (Compl. ¶¶ 6, 11, 14, 18, 20, 22.) PHC removed the case to this court, and subsequently filed its motion for summary judgment on all of Williams's claims. (Docket Nos. 1, 21.)

/ / / / /

**<u>LEGAL STANDARD</u>**

When considering a motion for summary judgment, the court's role is not to weigh the evidence, but merely to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). Summary judgment is appropriate if, after viewing the evidence in the light most favorable to the non-moving party, the court determines that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(e); *Vander v. United States Dept. of Justice*, 268 F.3d 661, 663 (9th Cir. 2001).

A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party must persuade the court through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, . . . that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only after the moving party has made such a showing does the burden shift to the non-moving party to show that a genuine issue of material fact remains. *See* Fed. R. Civ. P. 56(e).

The criteria of "genuineness" and "materiality" are distinct requirements. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 916 (9th Cir. 1996). The requirement that an issue be "genuine" relates to the quantum of evidence that the non-moving party must produce to defeat the motion for summary judgment. *Id.* The non-moving party may not rest on conclusory allegations or mere assertions, *see Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Leer v. Murphy,* 844 F.2d 628, 631 (9th Cir. 1988), but must come forward with significant probative evidence, *see Anderson*, 477

U.S. at 249-50; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  The evidence set forth by the non-moving party must be sufficient, taking the record as a whole, to allow a rational jury to find for the non-moving party.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Taylor*, 880 F.2d at 1045.  Where "the factual context renders [the non-moving party's] claim implausible . . . , [that party] must come forward with more persuasive evidence to support his claim than would otherwise be necessary" to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587.

The "materiality" of facts is determined by looking to the substantive law that defines the elements of the claim.  *See Anderson*, 477 U.S. at 248; *Nidds*, 113 F.3d at 916.

## DISCUSSION

**I.       Claims (2) and (3):  Sex Discrimination Under Federal and State Law.**

Williams's second and third claims allege that PHC discriminated and retaliated against him on the basis of his sex under federal and state law by:  (a) subjecting him to "unwelcome conduct of a sexual nature;" (b) failing to take "immediate and effective remedial action in response to" his complaints about that conduct; (c) retaliating against him by "subjecting him to on-the-job hostility, removing its support, and exacerbating his disabilities . . . by withdrawing the reasonable accommodation to his disabilities it had provided;" and/or (d) terminating his employment "when he could not return to work due to the medical condition it caused in the course of that retaliation." (Compl. ¶¶ 11(a)-(d), 14.)

In effect, Williams has alleged sex discrimination under federal and state law based on three theories:  (i) disparate treatment, (ii) hostile work environment, and (iii) retaliation.  Three of Williams's federal sex discrimination claims are time barred.  Moreover, all of Williams's federal

and state claims fail as a matter of law.

Williams brought his sex discrimination and retaliation claims under Title VII and O.R.S. Chapter 659A. *See* 42 U.S.C. § 2000e-2(a)(1) (It is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ."); *and* O.R.S. 659A.030(1)(a) (It is unlawful "[f]or an employer, because of an individual's . . . sex, . . . to bar or discharge from employment such individual.").

A plaintiff may respond to a summary judgment motion either by producing direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant, or by using the *McDonnell Douglas* burden shifting analysis. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004). "Under the *McDonnell Douglas* burden shifting framework, a plaintiff must first establish a *prima facie* case of unlawful discrimination. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the action. If the employer does so, the plaintiff must show that the articulated reason is pretextual." *Id.* at 1122 n.16. In federal court, the same analysis applies to federal and state claims. *See Snead v. Metropolitan Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1090-93 (9th Cir. 2001).

## A.   Time Barred Federal Sex Discrimination Claims.

Oregon is a deferral state under Title VII, and Williams therefore was required to file a Charge of Discrimination within 300 days of the alleged unlawful employment action. 42 U.S.C. § 2000e-5(e)(1). A plaintiff may not recover for "discrete acts of discrimination or retaliation," such as termination, failure to promote, refusal to hire, or a poor performance evaluation, "that occur outside the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).

In a hostile work environment claim, however, a plaintiff may recover for the entire period of the hostile work environment, including acts that occur outside the statutory time period, "so long as an act contributing to that hostile environment takes place within the statutory time period." *Id.*

Williams filed an administrative charge with BOLI on May 13, 2004, which also served as the filing of a charge with the Equal Employment Opportunity Commission ("EEOC"). Williams may recover for discrete acts of discrimination occurring on or after July 18, 2003, which is 300 days before he filed his BOLI charge. Williams may recover under a hostile work environment claim as long as an act contributing to that hostile environment occurred on or after July 18, 2003.

Williams alleges that PHC discriminated against him "by subjecting [him] to unwelcome conduct of a sexual nature." (Compl. ¶ 11(a).) PHC argues that Williams cannot recover for discrimination based on a hostile work environment because the last act of "unwelcome conduct of a sexual nature" could not have occurred any later than the last day he was at work, June 11, 2003, which is 336 days before he filed his BOLI charge. According to PHC, Williams's allegations concerning his hostile work environment claims center around Cunningham's two inappropriate comments, and the clipboard incident, both of which occurred before June 11, 2003. Williams argues that his termination, which occurred after July 18, 2003, is an act contributing to his hostile work environment, thus making his allegation timely. But Williams has not put forth sufficient evidence that his termination was an act of harassment contributing to his hostile work environment claim. Thus, Williams's federal sex discrimination claim based on a hostile work environment is time barred.

Williams also alleges that PHC discriminated against him "by failing to take immediate and effective remedial action in response to [his] complaint" about the conduct contributing to the

allegedly hostile work environment. (Compl. ¶ 11(b).) This claim is also untimely for the same reasons that the hostile work environment claim itself is untimely. PHC correctly argues that it could not have remedied Williams's complaints after he left work on June 11, 2003. Moreover, Williams has not put forth evidence that PHC could have remedied his complaints around the time of his termination, which would have rendered the claim timely. Thus, Williams's federal sex discrimination claim based on a failure to remedy an allegedly hostile work environment is time barred.

In addition, Williams alleges that PHC discriminated against him "by retaliating against him by subjecting him to on-the-job hostility, removing its support, and exacerbating his disabilities . . . by withdrawing the reasonable accommodation to his disabilities it had provided." (Compl. ¶ 11(c).). Williams claims that PHC terminating him after July 18, 2003, makes this claim timely. But he fails to put forth any evidence that his termination was part of PHC's hostility, removal of support, and exacerbation of his disabilities by withdrawing its reasonable accommodation for his alleged disabilities of ADHD and chronic anxiety. In other words, as PHC correctly argues, the discrete acts of retaliation alleged in paragraph 11(c) must have occurred on or before his last day of work, which predates July 18, 2003. Thus, Williams's federal sex discrimination claim based on retaliation is time barred.

In all, Williams's federal sex discrimination claims alleged in paragraphs 11(a)-(c) of his complaint are time barred, and PHC's motion for summary judgment is granted as to those claims.[1]

### B. Sex Discrimination - Disparate Treatment.

A *prima facie* case of sex discrimination may be based either on direct or circumstantial

---

[1] Even if those claims were not time barred, they would fail as a matter of law, as discussed below.

evidence of discriminatory intent, or on a presumption arising from the factors set forth in *McDonnell Douglas. See McGinest*, 360 F.3d at 1122; *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). A plaintiff may establish a *prima facie* case of sex discrimination under *McDonnell Douglas* by showing that: (1) he was a member of a protected group; (2) he was adequately performing his job; and (3) he suffered an adverse employment action, or was treated differently from others similarly situated. *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1113 (9th Cir. 2000). The amount of evidence necessary to establish a *prima facie* case for a sex discrimination claim "on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis*, 26 F.3d at 889. Summary judgment is appropriate, however, if a plaintiff fails to allege "specific facts" sufficient to establish his *prima facie* case. *Yartzoff v. Thomas*, 809 F.2d 1371, 1374 (9th Cir. 1987) (citations omitted).

Williams has failed to meet his evidentiary burden. He has put forth sufficient evidence indicating that he was a member of a protected group, and that he was adequately performing his job. Nonetheless, PHC argues that Williams has failed to provide even a minimal degree of evidence that he suffered an adverse employment action or was treated differently from others similarly situated because of his sex, nor has he put forth direct or circumstantial evidence of discriminatory intent. Williams simply posits that his termination was an adverse employment action. But Williams fails to put forth any evidence that he was terminated because of his sex, or that he was treated differently than other similarly-situated female PHC employees because of his sex. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.") (citation omitted);

*Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001) (Plaintiff was required to prove that any harassment took place "because of sex.").

On the evidentiary record before this court, Williams has not established his *prima facie* case. Thus, PHC's motion for summary judgment is granted against Williams's federal and state claims of sex discrimination based on any alleged disparate treatment by PHC because of his sex.[2]

## C.    Sex Discrimination - Hostile Work Environment/Sexual Harassment.

A plaintiff may establish a *prima facie* case of a hostile environment by showing: "(1) that he was subjected to verbal or physical conduct of a harassing nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Kortan*, 217 F.3d at 1109-10 (citation omitted). To overcome the defendant's motion for summary judgment, the plaintiff must show that there are genuine and material factual disputes as to whether a reasonable man would find that the defendant's conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and whether defendant, in response, failed to take adequate remedial and disciplinary action. *Steiner v. Showboat Operating Co.*, 25 F.3d 1459,

---

[2] Even if Williams was able to establish a *prima facie* disparate treatment claim, he would be unable to establish pretext. After the plaintiff has established his *prima facie* case, the burden shifts to the employer to establish a legitimate, non-discriminatory reason for the adverse employment action. *Manatt v. Bank of America, NA*, 339 F.3d 792, 800 (9th Cir. 2003). Once the employer articulates such a reason, the plaintiff "bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive. *Id.* (internal quotation marks and citations omitted).

PHC's legitimate, non-discriminatory reason for terminating Williams was that he failed to return to work upon exhaustion of his family medical leave. To avoid summary judgment, Williams "must do more than establish a prima facie case and deny the credibility" of PHC's reason, he "must produce specific, substantial evidence of pretext." *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) (internal quotation marks and citations omitted). Williams has failed to produce specific and substantial evidence of pretext. Williams's assertion that PHC's legitimate, non-discriminatory reason was false, and his general evidence of a hostile work environment, that Cunningham signed his termination papers and verbally harassed him, and that PHC seemingly failed to investigate his complaints, do not amount to the level of specific, substantial evidence necessary to avoid summary judgment.

1462-63 (9th Cir. 1994).

To determine whether there is a hostile environment, the court must consider all the circumstances. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). Relevant factors may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* The Supreme Court explained, "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Oncale*, 523 U.S. at 81-82. "[C]onduct must be extreme to result in a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "[T]he required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991). This analysis also applies to state law claims. *See Snead*, 237 F3d at 1090-93; *see also Holien v. Sears, Roebuck & Co.*, 298 Or. 76, 88, 689 P.2d 1292, 1298 (1984) (applying Title VII elements to state law claim).

Williams has failed to provide sufficient evidence to support the conclusion that a reasonable man would find Cunningham's conduct to be sufficiently severe or pervasive to alter the conditions of the his employment and create an abusive working environment. It is undisputed that Williams was subjected to three instances of unwelcome sexual conduct by Cunningham, who made two inappropriate comments to him, and swatted him in the buttocks with her clipboard. Williams also alleges that Cunningham had a habit of untucking and tucking in her shirt in a sexually provocative manner, that Cunningham often yelled at him, and that Cunningham changed the board identifying

his delivery runs, presumably to confuse him.

Williams's concern with Cunningham's yelling and attempts to confuse him is unwarranted because he fails to put forth any evidence that Cunningham's conduct would not have occurred but for the fact that he is male. *See Hall v. Gus Constr. Co.*, 842 F.2d 1010, 1014 (8th Cir. 1988) ("[A]ny harassment or other unequal treatment of an employee or group of employees that would not occur but for the sex of the employee . . . may, if sufficiently patterned or pervasive, comprise an illegal condition of employment under Title VII."). In other words, even assuming that Cunningham's non-sexual yelling and board-changing was severe and pervasive, there is nothing in the record to support the inference that Cunningham's non-sexual conduct was aimed at Williams because he is a man.

Moreover, the three undisputed instances of unwanted sexual conduct, and any allegedly repeated and provocative shirt fixations by Cunningham are not "abusive, humiliating, or threatening" to extent that they "pollute[d Williams's] workplace, making it more difficult for [him] to do [his] job, to take pride in [his] work, and to desire to stay on in [his] position." *Steiner*, 25 F.3d at 1463. Cunningham's conduct is akin to that reported in cases where a hostile work environment was *not* found, as opposed to cases where defendant's conduct was sufficiently severe or pervasive to warrant a finding of a hostile work environment. *Compare Kortan*, 217 F.3d at 1110-1111 (the court held that a supervisor referring to a female employee as a "castrating bitch," "madonna," and "regina" was insufficient to state a claim for a hostile work environment), *and Payne v. Appollo College - Portland, Inc.,* 327 F. Supp. 2d 1237, 1245-46 (D. Or. 2004) (supervisor's statement to employee that she should be a strip dancer because "she had a nice body and men would pay to see her dance;" rubbing employee's thigh and stating, "that feels nice;" and occasional touching and

hugging not sufficient to state claim for hostile work environment), *and Sandvik v. Secretary of HHS,* No. CIV. 98-701-KI, 1999 WL 390830, at *6 (D. Or. June 11, 1999), *aff'd*, 246 F.3d 676 (9th Cir. 2000) (court held it was insufficient to state claim for hostile environment based upon sex where supervisor used term "bitch," told plaintiff that she could "do a couple tricks" to pay for a hotel, exhibited photos of nude persons to plaintiff and discussed penile enlargements with her), *with Nichols*, 256 F.3d at 872-73 (finding a hostile work environment where a male employee was called "faggot" and "fucking female whore" by co-workers and supervisors at least once a week and often several times a day), *and Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1108-09 (9th Cir. 1998) (determining that summary judgment was inappropriate in a hostile work environment claim where plaintiff's supervisor made repeated sexual remarks to her, told her of her his sexual fantasies and desire to have sex with her, commented on her physical characteristics, and asked over a loud speaker if she needed help changing her clothes).

Williams has failed to put forth sufficient evidence to establish his *prima facie* case. Thus, PHC's motion for summary judgment is granted against Williams's federal and state claims of sexual discrimination based on a hostile work environment.

### D.     Sex Discrimination - Retaliation.

To state a *prima facie* case of retaliation, the plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there was a causal link between his protected activity and the employer's action. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002). The amount of evidence necessary to establish a *prima facie* case for a sex discrimination claim "on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis*, 26 F.3d at 889. Summary judgment is

appropriate, however, if a plaintiff fails to allege "specific facts" sufficient to establish his *prima facie* case. *Yartzoff*, 809 F.2d at 1374.

Williams has not put forth sufficient evidence to establish his *prima facie* case of retaliation. Both parties agree that Williams engaged in protected activity when he complained to Scott in May 2003 about Cunningham's unwanted sexual conduct. And certainly, Williams suffered an adverse employment action when PHC terminated him. *See Villiarimo*, 281 F.3d at 1065. But Williams seemingly is not concerned with that adverse employment action. Rather, he alleges that PHC engaged in the following adverse employment actions: subjecting him to a hostile work environment, failing to take effective and immediate remedial action in response to a discrimination complaint, issuing an undeserved performance review, and withdrawing a reasonable accommodation for his disability.

An adverse employment action includes "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1242-43 (9th Cir. 2000). Examples of sufficiently adverse employment actions include termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review, refusal to consider for promotion, elimination of an employee feedback meeting, elimination of a flexible start-time policy, imposition of additional burdensome security measures, and disproportionate reduction in workload and pay versus other employees. *Id.* at 1243-44; *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). In other words, "only non-trivial employment actions that would deter reasonable employees from complaining about Title VII violations will constitute actionable retaliation." *Brooks*, 229 F.3d at 928.

None of the four adverse employment actions alleged by Williams rise to the level of a "non-trivial" adverse employment action that would deter reasonable employees from complaining about sex discrimination. Williams argues that the hostile work environment created by the three instances of unwanted sexual conduct, the provocative shirt-untucking, the yelling, and board-changing, is an adverse employment action by PHC. But Williams does not point to any case law establishing that a hostile work environment amounts to an adverse employment action. Moreover, this court has already determined that Williams's work environment was not hostile as a matter of law.

Williams also fails to provide authority illustrating that failing to take effective and immediate remedial action in response to a discrimination complaint amounts to an adverse employment action, nor does he provide evidence that PHC failed to actually take some sort of remedial action. Finally, Williams provides no legal authority that PHC withdrawing a reasonable accommodation amounts to an adverse employment action, nor has he put forth any evidence that PHC stopped giving him written directions and required him to read maps. Williams has not provided legal authority or sufficient evidence to allow this court to conclude that these three alleged instances of adverse employment actions rise to the level of actions that would deter employees from engaging in protected activity.

Williams has put forth evidence that Cunningham gave him a negative performance review. The Ninth Circuit has held that an undeserved negative performance review can constitute an adverse employment decision. *Brooks*, 229 F.3d at 928. But PHC argues that Williams's evaluation was not an adverse employment action because it was subject to modification, and therefore it was not sufficiently final to constitute an adverse employment action. *Id.* at 929-30; *see also Steiner*, 25 F.3d at 1465 (the court noted that low marks on an evaluation were not going to be used to fire

the employee, and that there was no indication in the record that they were used as the basis for any adverse actions against the employee). For instance, PHC's Issue and Grievance Policy provides a process for an employee to seek review of a performance evaluation if he disagrees with it. (*See* Decl. of Krueger Ex. A at 37.) Even though Williams seemingly failed to seek review of his negative performance review, that he was able to do so illustrates that his performance review was not final. Thus, Williams's allegedly negative performance review was not sufficiently final to constitute the type of adverse employment action that "is reasonably likely to deter the charging party or others from engaging in protected activity." *Ray*, 217 F.3d at 1242-43. Williams has not put forth sufficient evidence showing that he suffered an adverse employment action.[3]

Williams has failed to establish his *prima facie* case. Thus, PHC's motion for summary judgment is granted against Williams's federal and state claims of sexual discrimination based on retaliation.[4]

## II.    Claims (4) and (5):  Disability Discrimination Under Federal and State Law.

Williams's fourth and fifth claims allege that PHC discriminated against him because of his disabilities under federal and state law by:  (a) "failing to reasonably accommodate" his disabilities of ADHD and chronic anxiety; (b) "removing an agreed upon accommodation;" and/or (c) "terminating him because of his disabilities." (Compl. ¶¶ 18, 20.) This court lacks subject matter

---

[3] Williams does not focus on his termination as an adverse employment action. If he had, he nonetheless would be unable to show a causal connection between his complaint in May 2003 and his eventual termination in early October 2004. *See Villiarimo*, 281 F.3d at 1065 (Although "causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity . . . a one-year interval between the protected expression and the employee's termination, standing alone, is too long to raise an inference of discrimination.") (internal quotation marks and citations omitted). Without evidence of causation, Williams would be unable to establish his *prima facie* case.

[4] Even if Williams was able to establish a *prima facie* retaliation claim, he would be unable to establish pretext in the same manner as in his disparate treatment claim. *See* note 2, *supra*.

jurisdiction to hear Williams's federal claim. In addition, two of his three state allegations are time barred, and the remaining state allegation fails as a matter of law.

Williams brought his disability discrimination claims under the ADA and O.R.S. Chapter 659A. *See* 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."); O.R.S. 659A.112(1) ("It is an unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment because an otherwise qualified person is a disabled person.").

A plaintiff may respond to a summary judgment motion either by producing direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant, or by using the *McDonnell Douglas* burden shifting analysis. *McGinest*, 360 F.3d at 1122; *see Snead*, 237 F.3d at 1093 (applying *McDonnell Douglas* to an ADA discrimination case). "Under the *McDonnell Douglas* burden shifting framework, a plaintiff must first establish a *prima facie* case of unlawful discrimination. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the action. If the employer does so, the plaintiff must show that the articulated reason is pretextual." *McGinest*, 360 F.3d at 1122 n.16. In federal court, the same analysis applies to federal and state claims. *See Snead*, 237 F.3d at 1090-93.

### A.    Federal Disability Discrimination Claim.

To establish subject matter jurisdiction over an ADA claim, a plaintiff must exhaust his administrative remedies by filing a timely charge with the EEOC or the appropriate state agency,

thereby affording the agency an opportunity to investigate the charge. 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(b); *see Leong v. Potter*, 347 F.3d 1117, 1121-22 (9th Cir. 2003) (plaintiff's failure to exhaust his administrative remedies by alleging a disability claim in his EEOC charge bars federal subject matter jurisdiction). The specific claims made in this court ordinarily must be presented to the EEOC or appropriate state agency. *Albano v. Schering-Plough Corp.*, 912 F.2d 384, 385 (9th Cir. 1990). But this court has jurisdiction over any charges of discrimination that are "like or reasonably related to" the allegations made before the EEOC, as well as charges that are within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations. *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990).

Williams claims disability discrimination under the ADA. But his BOLI charge filed on May 13, 2004, does not explicitly discuss any claims for disability discrimination. His BOLI charge only alleges "unlawful employment practice in that I was subject to unwanted sexual comments and/or physical contact of a sexual nature that had the effect of substantially interfering with my work performance and/or creating a hostile work environment." (Pl.'s Ex. 16.) Williams's claim of disability discrimination under the ADA is not like or reasonably related to the explicit allegations of sex discrimination made in his BOLI complaint. Moreover, an investigation into alleged disability discrimination would not reasonably grow out of a BOLI investigation into Williams's complaints of sex discrimination.

Williams notes that he discussed his ADHD and chronic anxiety on a BOLI intake questionnaire, and also listed those alleged disabilities on a form tailored for disability complaints. (Pl. Ex. 17.) Williams argues that this shows that he intended to pursue his disability discrimination claim at the BOLI level, and that his claim should not be dismissed because he failed to explicitly

list it on his BOLI form.  Granted, as Williams argues, BOLI "charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *Sosa*, 920 F.2d at 1451.  But Williams's mere mention of his ADHD and chronic anxiety, and some resulting symptoms arising from work-related stress, do not make BOLI "apprised, in general terms, of the alleged discriminatory parties and the alleged discriminatory acts" arising under the ADA. *Id.*  In other words, noting ADHD and chronic anxiety on intake forms does not provide enough notice to BOLI to investigate a charge of disability discrimination, nor does it allow a BOLI investigation into disability discrimination to reasonably grow out of a sex discrimination investigation.

Williams also relies on *Albano* for his contention that he should not be penalized for failing to list his alleged disability discrimination in his BOLI complaint.  912 F.2d at 385-86.  Williams's reliance on *Albano* is unavailing, however, because the plaintiff in that case made an affirmative effort to correct his EEOC complaint to include his additional allegations, but the EEOC improperly refused to amend the plaintiff's EEOC charge.  *Id.*  Here, Williams made no such affirmative effort to correct his incomplete BOLI complaint to include his ADA discrimination charge, nor does he evidence any conduct by BOLI that would indicate that it refused to allow him to amend his complaint.

Also, Williams argues that BOLI at least had begun the initial steps of investigating a disability claim as illustrated by notes on a  BOLI Intake Interview form.  The notes simply state that, "Complainant has ADHD.  Complainant disclosed to Monica early on his disability.  The organization specializes in hiring people with disabilities.  Respondent has hired other people with disabled people."  (Decl. of Krueger Ex. E at 1.)  In addition, the notes mention the reasonable

accommodation of providing maps. (*Id.* at 2.) These notes do not evidence that BOLI was investigating disability discrimination, or that Williams intended to file a charge of disability discrimination. And the notes do not apprise BOLI "in general terms, of the alleged discriminatory parties and the alleged discriminatory acts" arising under the ADA. *Sosa*, 920 F.2d at 1451.

Because Williams failed to exhaust his administrative remedies on his disability discrimination claim under the ADA, and because that claim is not "like or reasonably related" to his sex discrimination charge filed with BOLI, this court lacks jurisdiction to hear his ADA claim. *See Leong*, 347 F.3d at 1121-22; *Sosa*, 920 F.2d at 1456; *see also Ismail v. The Univ. of Portland*, No. 98-1477-KI, 1999 WL 732590, at *6 (D. Or. Sept. 21, 1999) (The court granted summary judgment after determining that it lacked subject matter jurisdiction to hear a sexual harassment claim because plaintiff failed to exhaust her administrative remedies on her sexual harassment claim, and her claim was not "like or reasonably related" to her original gender-based discrimination charge filed with the EEOC.) Accordingly, PHC's motion for summary judgment is granted against Williams's fourth claim for disability discrimination under federal law.

**B.      State Disability Discrimination Claim.**

Williams's first two state allegations, that PHC discriminated against him by failing to reasonably accommodate his disabilities and by removing an agreed upon accommodation, are untimely. (Compl. ¶¶ 18(a), (b), 20.) His final allegation, that PHC discriminated against him by terminating him because of his disabilities, fails as a matter of law. (Compl. ¶¶ 18(c), 20.)

**1.      Time Barred Claims.**

Williams's first two allegations under his state law disability discrimination claim are time barred. O.R.S. 659A.875 requires that a plaintiff file suit within one year of the alleged unlawful

employment action. Williams's last day of work, June 11, 2003, was the last day that PHC could have failed either to reasonably accommodate Williams's disabilities, or removed an agreed upon accommodation. Thus, Williams was required by statute to bring his claim by June 11, 2004. But Williams filed his complaint on September 9, 2004, making his failure to accommodate and removal of accommodations allegations untimely. Thus, PHC's motion for summary judgment is granted as to those claims.

### 2.      Disability Discrimination - Termination.

To state a *prima facie* case of disability discrimination in an employment termination case, the plaintiff must show that: (1) he is disabled; (2) he is qualified "with or without reasonable accommodation . . . to perform the essential functions of the job;" and (3) the employer terminated him because of his disability. *Broussard v. Univ. of Cal., at Berkeley*, 192 F.3d 1252, 1255-56 (9th Cir. 1999) (citation omitted); *Snead*, 237 F.3d at 1087. Summary judgment is appropriate if a plaintiff fails to allege "specific facts" sufficient to establish his *prima facie* case. *Yartzoff*, 809 F.2d at 1374. "The standard for establishing a *prima facie* case of discrimination under Oregon law is identical to that used in federal law." *Snead*, 237 F.3d at 1087 (citations omitted).

An employee is disabled if he has "a physical or mental impairment that substantially limits one or more . . . major life activities . . . ." 42 U.S.C. § 12102(2)(A); O.R.S. 659A.100(1). A "mental impairment" includes "[a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2); O.A.R. 839-006-0205(10). "Substantially limits" means that the individual is "[u]nable to perform a major life activity that the average person in the general population can perform," or is "[s]ignificantly restricted as to the condition, manner or duration under which an

individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1); O.R.S. 659A.100(2)(d). A "major life activity" includes "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630(i); *see* O.R.S. 659A.100(2)(a).

Williams argues that he is disabled because his ADHD and chronic anxiety are mental impairments that substantially limit his major life activities of thinking, *Head v. Glacier Northwest, Inc.*, 413 F.3d 1053, 1061 (9th Cir. 2005), and concentrating, *Gagliardo v. Connaught Labs., Inc.*, 311 F.3d 565, 569 (3d Cir. 2002). Williams puts forth evidence that he is "not geographically sound" and "at times" had trouble reading maps, and instead used written instructions to alleviate his confusion; that his chronic anxiety "causes frustration, nervousness, fear and feelings of inadequacy;" and that he would return to the PHC warehouse between deliveries rather than going from delivery points A to B. (Pl.'s Mem. at 27-28.) For Williams, this illustrates a triable issue of fact as to whether his ADHD and chronic anxiety substantially limit his major life activities of thinking and concentrating.

PHC correctly argues, however, that there is insufficient evidence to establish that Williams's impairments substantially limit his major life activities of thinking and concentrating. First, although Williams may be impaired from reading maps, he is not limited in a major life activity because reading maps is not a major life activity. *See Fraser v. Goodale*, 342 F.3d 1032, 1040 (9th Cir. 2003). In *Fraser*, the Ninth Circuit explained that, "just because a certain broad activity is of central importance to most people's daily lives does not mean that every sub-type of the activity is also a major life activity." *Id.* Thus, although eating is a major life activity, "eating specific types

of foods, or eating specific amounts of food, might or might not be a major life activity.  If a person is impaired only from eating chocolate cake, he is not limited in a major life activity because eating chocolate cake is not a major life activity.  On the other hand, peanut allergies might present a unique situation  because so many seemingly innocent foods contain trace amounts of peanuts that could cause severely adverse reactions." *Id.*  It follows that, although thinking and concentrating are major life activities, reading maps is not.  Williams has not put forth sufficient evidence showing that reading maps is more like peanut allergies rather than eating chocolate cake.  In addition, PHC has put forth evidence that reading maps is not central to Williams's daily life, as illustrated by the fact that he was able to continue his daily activities by using written directions rather than maps.  In other words, on the evidentiary record before this court, reading maps is more like the "privilege" of eating chocolate cake rather than the "necessity" of not eating peanuts because of an allergy.

In addition, although Williams lists his symptoms caused by his chronic anxiety, he fails to put forth any evidence showing how those symptoms affect his thinking and concentrating.  Arguably, his chronic anxiety required him to return to the warehouse between deliveries.  But Williams's evidence that PHC allowed him to return to the warehouse between deliveries is not sufficient to show that his impairments substantially limit his major life activities of thinking and concentrating.  In particular, even though PHC allowed Williams to return to the warehouse, he fails to put forth evidence that he would be unable to think and concentrate if he was required to proceed directly from delivery point A to delivery point B.  Moreover, although Williams arguably could be impaired if he could not return to the warehouse between runs, he is not limited in a major life activity because returning to the warehouse is not a major life activity.  *See Fraser*, 342 F.3d at 1040.

Because Williams has not put forth sufficient evidence that he is disabled, he cannot establish his *prima facie* case of disability discrimination. Thus, PHC's motion for summary judgment is granted against Williams's fifth claim for relief alleging that PHC discriminated against him under state law by terminating him because of his disabilities.[5]

## III.    Claim (6):  Family Medical Leave.

Williams's sixth claim alleges that PHC terminated him "because he took family leave." (Compl. ¶ 22.)  Williams conceded this claim at oral argument.  Accordingly, PHC's motion for summary judgment is granted.

## IV.    Claim (1):  Wrongful Discharge.

Williams's first claim for relief alleges that he was wrongfully discharged for "complaining about unwelcome conduct of a sexual nature, and/or for taking Oregon family medical leave." (Compl. ¶¶ 4-6.) The claim fails as a matter of law.

Oregon recognizes common law claims for wrongful discharge in the context of at-will employment relationships when the employee alleges he or she has been discharged for fulfilling a societal obligation or for pursuing an employment-related right of public importance. *Dunwoody v. Handskill Corp.*, 185 Or. App. 605, 609-12, 60 P.3d 1135, 1138-39 (2003).  A plaintiff is required to show a causal connection between a protected activity and the discharge.  *See Shockey v. City of Portland*, 313 Or. 414, 422-23, 837 P.2d 505, 509-10 (1992).  In other words, the protected activity

---

[5]  If this court had jurisdiction over Williams's federal discrimination claims, and if his other state claims had been timely, all of his federal and state claims nevertheless would fail as a matter of law because Williams would be unable to show a genuine issue of material fact as to whether he is disabled under the ADA and Oregon law.

Furthermore, even if Williams was able to establish a *prima facie* disability discrimination claim, he would be unable to establish pretext in his disability discrimination claim in the same manner as in his sex discrimination claim. *See* note 2, *supra*.

must have been a "substantial factor" in the motivation to discharge the employee. *Estes v. Lewis & Clark Coll.*, 152 Or. App. 372, 381, 954 P.2d 792, 797 (1998) (citing *Holien*, 298 Or. at 90 n.5, 689 P.2d at 1300). To be a substantial factor, the employer's wrongful purpose must have been "a factor that made a difference" in the discharge decision. *Id.* (citing *Nelson v. Emerald People's Utility Dist.*, 116 Or. App. 366, 373, 840 P.2d 1384 (1992), *aff'd in part, rev'd in part*, 318 Or. 99, 862 P.2d 1293, 1390 (1993)).

PHC argues that Williams has failed to offer any evidence of a causal connection between him complaining about Cunningham's unwanted sexual conduct or him taking family medical leave, and his discharge. Williams argues that he has presented evidence showing that PHC's asserted reason for terminating him – that he failed to return to work after exhausting his medical leave – "was false," and that PHC terminated him "in substantial part" because he took medical leave. (Pl.'s Mem. at 32.) But Williams has failed to put forth sufficient evidence showing that either him complaining about the unwanted sexual conduct or him taking family medical leave was a substantial factor – *i.e.,* a factor that made a difference – in PHC's termination decision. Accordingly, PHC's motion for summary judgment is granted against Williams's first claim for relief for wrongful discharge.

## **CONCLUSION**

Based on the foregoing, PHC's motion is GRANTED, and Williams's claims are DISMISSED.

Dated this 31st day of October, 2005.

                               /s/ Donald C. Ashmanskas       
                                 Donald C. Ashmanskas
                                 United States Magistrate Judge